[Cite as *State v. Jenkins*, 2024-Ohio-1094.]

COURT OF APPEALS
LICKING COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | |
|---|---|
| STATE OF OHIO | JUDGES:<br>Hon. William B. Hoffman, P.J. |
| Plaintiff-Appellee | Hon. Craig R. Baldwin, J.<br>Hon. Andrew J. King, J. |
| -vs- | |
| | Case No. 2023 CA 00058 |
| LEONARD J. JENKINS | |
| Defendant-Appellant | O P I N I O N |

CHARACTER OF PROCEEDINGS:     Appeal from the Licking County Court of
                              Common Pleas, Case No. 2022 CR 00486

JUDGMENT:                     Affirmed

DATE OF JUDGMENT ENTRY:       March 22, 2024

APPEARANCES:

For Plaintiff-Appellee                For Defendant-Appellant

JENNY WELLS                           BRIAN A. SMITH
Licking County Prosecuting Attorney   123 S. Miller Road, Suite #250
                                      Akron, Ohio 44333
KENNETH W. OSWALT
Assistant Prosecuting Attorney
20 S. Second Street, 4th Floor
Newark, Ohio 43055

*Hoffman, P.J.*

**{¶1}** Defendant-appellant Leonard J. Jenkins appeals the judgment entered by the Licking County Common Pleas Court convicting him following jury trial of having weapons while under disability (R.C. 2923.13(A)(3)), receiving stolen property (R.C. 2913.51(A)), two counts aggravated possession of methamphetamine (R.C. 2925.11(A)(C)(1)(a)), and possessing a defaced firearm (R.C. 2923..201(A)(2)), with a forfeiture specification as to the firearm (R.C. 2981.02(A)(1)(C), 2941.1417(A)), and sentencing him to an aggregate term of incarceration of eight and one-half years. Plaintiff-appellee is the state of Ohio.

STATEMENT OF THE FACTS AND CASE

**{¶2}** On July 7, 2022, police in Newark, Ohio, were conducting surveillance of Appellant's house for suspected drug activity. Detective Benjamin Martens of the Licking County Sheriff's Office conducted a traffic stop on a black pickup truck in which Appellant was a passenger, when the truck turned into Appellant's driveway without using a turn signal. A K-9 alerted on the vehicle, and methamphetamine was found in the truck, between the passenger seat and the center console. Appellant admitted to police the drugs belonged to him, and estimated their weight at about 2 grams.

**{¶3}** Appellant complained of having medical issues related to diabetes, and an emergency medical squad was called to the scene. Appellant began screaming at the emergency medical technicians, and refused treatment.

**{¶4}** Detective Todd Green of the Newark Police Department asked Appellant if he could speak to him. Appellant stated he needed to go inside the home for the air conditioning, a glass of cold water, and medicine for the issues he was experiencing. Det.

Green asked if he could come inside to talk to Appellant. Appellant initially responded no, but then stated the officer could come inside.

{¶5} After entering the house, Det. Green asked for consent to search the house. Appellant responded negatively. Det. Green told Appellant he would have to secure the house to get a warrant, which would take three to four hours, during which time Appellant and others inside the home would have to leave the house. Appellant then agreed to allow Det. Green to search the house, and Appellant personally selected the two officers he would allow to search with Det. Green. Officers found a .38 caliber revolver in a dresser drawer in Appellant's bedroom. The serial number had been filed off the firearm. Police were able to recover the original serial number from the gun, and determined the weapon had been reported stolen.

{¶6} On September 14, 2022, Appellant was arrested by Officer Derrick Beach of the Newark Police Department pursuant to a warrant. Methamphetamine weighing more than three grams was found in Appellant's pocket.

{¶7} Appellant was indicted by the Licking County Grand Jury for two counts of aggravated possession of drugs, with the count stemming from September 14, 2022, including a special finding the weight of the methamphetamine exceeded 3 grams; having a weapon under disability; possessing a defaced firearm; and receiving stolen property. The indictment included a forfeiture specification.

{¶8} Appellant filed a motion to dismiss the charges of having a weapon under disability and possessing a defaced firearm, as well as the forfeiture specification, on the basis R.C. 2923.13(A)(2), which Appellant was not charged with violating, violates the Second Amendment. The trial court overruled the motion. Appellant also filed a motion

to suppress, arguing his consent to search the house was not voluntary. Following an evidentiary hearing, the trial court overruled the motion to suppress.

{¶9} The case proceeded to jury trial. Appellant testified at trial the gun found in his bedroom was not his. He testified he loaned a friend money to buy the gun, and when the friend was unable to pay Appellant back, the friend put the gun in Appellant's dresser drawer. Appellant testified when the officer showed him the firearm during the search of the house, the serial number was on the firearm. He testified his admission the drugs found in the car belonged to him was sarcasm, not a confession.

{¶10} Appellant was found guilty on all counts, and the trial court convicted Appellant in accordance with the jury's verdict. The trial court sentenced Appellant to an aggregate term of incarceration of eight and one-half years. It is from the July 14, 2023 judgment of the trial court Appellant prosecutes his appeal, assigning as error:

I. APPELLANT'S CONVICTION FOR COUNT ONE OF THE SUPERSEDING INDICTMENT, HAVING WEAPONS WHILE UNDER DISABILITY, CONSTITUTED PLAIN ERROR AND VIOLATED APPELLANT'S RIGHT TO BEAR ARMS UNDER THE SECOND AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTION 4 OF THE OHIO CONSTITUTION, BECAUSE R.C. 2923.13(A)(3) IS UNCONSTITUTIONAL, BOTH ON ITS FACE AND AS APPLIED TO APPELLANT, FOR VIOLATING THE SECOND AMENDMENT TO THE

UNITED STATES CONSTITUTION AND ARTICLE I, SECTION 4 OF THE OHIO CONSTITUTION.

II. THE TRIAL COURT ERRED IN DENYING APPELLANT'S MOTION TO SUPPRESS, IN VIOLATION OF APPELLANT'S RIGHT AGAINST UNREASONABLE SEARCHES AND SEIZURES UNDER THE FOURTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTION 14 OF THE OHIO CONSTITUTION.

III. THE FAILURE OF APPELLANT'S TRIAL COUNSEL TO FILE A MOTION TO SUPPRESS CHALLENGING THE EVIDENCE DERIVED FROM THE JULY 7, 2022 TRAFFIC STOP ON THE BASIS THAT OFFICERS DID NOT HAVE A REASONABLE AND ARTICULABLE SUSPICION OF CRIMINAL ACTIVITY TO CONDUCT A TRAFFIC STOP OF THE VEHICLE CONSTITUTED INEFFECTIVE ASSISTANCE OF COUNSEL, IN VIOLATION OF APPELLANT'S RIGHT TO COUNSEL UNDER THE SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTION 10 OF THE OHIO CONSTITUTION.

IV. APPELLANT'S CONVICTIONS UNDER COUNTS TWO, THREE, AND FIVE OF THE SUPERSEDING INDICTMENTS WERE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

I.

**{¶11}** In his first assignment of error, Appellant argues the trial court committed plain error in failing to find R.C. 2923.13(A)(3) unconstitutional pursuant to the United States Supreme Court's decision in *New York State Rifle & Pistol Assn., Inc. v. Bruen*, 597 U.S. 1, 142 S.Ct. 2111, 213 L.Ed.2d 387.

**{¶12}** Appellant was charged and convicted of having a weapon under a disability pursuant to R.C. 2923.13(A)(3):

(A) Unless relieved from disability under operation of law or legal process, no person shall knowingly acquire, have, carry, or use any firearm or dangerous ordnance, if any of the following apply:

(3) The person is under indictment for or has been convicted of any felony offense involving the illegal possession, use, sale, administration, distribution, or trafficking in any drug of abuse or has been adjudicated a delinquent child for the commission of an offense that, if committed by an adult, would have been a felony offense involving the illegal possession, use, sale, administration, distribution, or trafficking in any drug of abuse.

**{¶13}** However, in the trial court, Appellant filed a motion to dismiss challenging the constitutionality of R.C. 2923.13(A)(2):

(A) Unless relieved from disability under operation of law or legal process, no person shall knowingly acquire, have, carry, or use any firearm or dangerous ordnance, if any of the following apply:

(2) The person is under indictment for or has been convicted of any felony offense of violence or has been adjudicated a delinquent child for the commission of an offense that, if committed by an adult, would have been a felony offense of violence.

{¶14} The error does not appear to be merely typographical in the recitation of the statute number, because in his motion, Appellant quotes the language of subsection (A)(2), recites he was charged with violating (A)(2), and argues the provision prohibiting possession of a weapon by felons has no historical basis. Pursuant to *Bruen*, the burden is on the State to demonstrate the "regulation is consistent with this Nation's historical tradition of firearm regulation." *Bruen*, 597 U.S. at 17, 142 S.Ct. at 2126. The State filed its response, focusing on restrictions on felons possessing firearms pursuant to subsection (A)(2), rather than focusing specifically on prohibitions on persons indicted for or convicted of felony drug offenses pursuant to subsection (A)(3).

{¶15} At the hearing, Appellant rested on his motion without making argument to the court. The State argued to the trial court based on Appellant's challenge to subsection (A)(2) relating to felony offenses of violence. Because throughout the proceedings in the trial court Appellant failed to challenge the constitutionality of  R.C. 2923.13(A)(3), we agree with Appellant we must find plain error to reverse.

**{¶16}** Under the plain error standard of review, the Appellant bears the burden of showing but for a plain or obvious error, the outcome of the proceeding would have been otherwise, and reversal must be necessary to correct a manifest miscarriage of justice." *State v. West*, 168 Ohio St.3d 605, 2022-Ohio-1556, 200 N.E.3d 1048.

**{¶17}** The United States Court of Appeals for the Sixth Circuit summarized the plain error standard of review of a *Bruen* challenge as follows:

But because we review this case for plain error, we must determine only whether the challenged statutes are "obviously unconstitutional." *United States v. Al-Maliki*, 787 F.3d 784, 794 (6th Cir. 2015) (emphasis in original). Therefore, we need not decide today whether they comply with *Bruen's* mandate.

**{¶18}** *United States v. Ramadan,* 2023 WL 6634293, (6th District October 12, 2023), p. 2.

**{¶19}** In *Bruen*, the challenged statute prohibited a person from carrying a firearm without a license, and to obtain a license the person must prove "proper cause," defined as demonstrating a special need for self-protection distinguishable from that of the general community. In finding the "proper cause" requirement violated the Second Amendment, the court held to justify a firearm regulation, the burden is on the government to demonstrate the regulation is consistent with this Nation's historical tradition. 597 U.S. at 17. However, throughout the opinion the court repeatedly referred to the Second Amendment's protection of the rights of *law-abiding* citizens. The court noted the Second

Amendment elevates above all other interests the right of law-abiding, responsible citizens to use arms for self-defense. *Id.* at 26. While the court chose not to provide an exhaustive list of the features which would render a current regulation relevantly similar to a historical regulation under the Second Amendment, the court pointed toward two metrics: "how and why the regulations burden a law-abiding citizen's right to armed self-defense." *Id.* at 29. The court took note of the fact the petitioners in *Bruen* were ordinary, law-abiding, adult citizens. *Id.* at 31-32. In reviewing New York's proper-cause requirement, the court noted apart from a few outliers, American governments have not required law-abiding, responsible citizens to demonstrate a special need for self-protection to possess a firearm. *Id.* at 70. The ultimate holding of the court found New York's proper cause requirement violates the Second Amendment in that it prevents law-abiding citizens of ordinary self-defense needs from exercising their right to keep and bear arms. *Id.* at 71.

{¶20} Concurring separately, Justice Alito noted the *Bruen* holding decided nothing about who may lawfully possess a firearm, but merely decided the Second Amendment protects the right of law-abiding people to carry a gun outside of their home for self-defense. *Id.* at 72, 76. Similarly, Justice Kavanaugh also concurred separately, noting nothing in *Bruen* should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons. *Id.* at 81.

{¶21} Although it appears no post-*Bruen* case law exists in Ohio on the constitutionality of any of the provisions of R.C. 2923.13, numerous federal courts have considered the constitutionality of similar United States Code provisions. Although 18 USC 922 does not have a provision which, like R.C. 2923.13(A)(3), prohibits gun

possession by a person convicted of a felony drug offense, it does prohibit possession of a firearm by a person who has been convicted of a crime punishable by more than a year in prison, and also prohibits possession of a firearm by a person who is an unlawful user or addicted to any controlled substance. 18 USC 922(g)(1),(3).

{¶22} A few federal cases have found these provisions of the United States Code unconstitutional pursuant to the *Bruen* test. In *United States v. Daniels*, the Fifth Circuit Court of Appeals found the ban on firearm possession unconstitutional in a case where the defendant, who was sober when arrested, admitted to using marijuana multiple times a month. 77 F. 4th 337 (Fifth Cir. 2023). The Fifth Circuit also held a federal statute prohibiting firearm possession by a person subject to a domestic violence restraining order unconstitutional. *United States v. Rahimi,* 61 F. 4th 663 (Fifth Circ. 2023). The Third Circuit Court of Appeals found the provision prohibiting a felon from possessing a weapon unconstitutional as applied to a person convicted of making a false statement to obtain food stamps, but noted the decision was narrow, and only as applied to the defendant, given his specific prior violation. *Range v. Atty. Gen. United States of America,* 69 F.4th 96, 106 (Third Cir. 2023).

{¶23} However, the overwhelming weight of federal authority upheld federal prohibitions on possession of weapons by felons and/or persons using controlled substances as constitutional under *Bruen*, as summarized by the United States District Court for the Northern District of Iowa:

This Court is not alone in reaching the conclusion that Section 922(g)(3) does not violate the Second Amendment. Numerous other district

courts have reaffirmed the conclusion that Section 922(g)(3) is constitutional after *Bruen. See, e.g., United States v. Walker,* 8:22-CR-291, 2023 WL 3932224, at *5 (D. Neb. June 9, 2023) (rejecting post-*Bruen* challenge to Section 922(g)(3), finding the *Seay* case controlling); *Le*, 2023 WL 3016297, at *5 (rejecting a post-*Bruen* constitutional challenge to Section 922(g)(3)); *United States v. Posey*, Case No. 2:22-CR-83 JD, 2023 WL 1869095, at *9-10 (N.D. Ind. Feb. 9, 2023) (denying as applied and facial post-*Bruen* challenge to Section 922(g)(3)); *United States v. Lewis*, Case No. CR-22-368-F, 2023 WL 187582, at *4 (W.D. Okla. Jan. 13, 2023) (rejecting a post-*Bruen* constitutional challenge to Section 922(g)(3)); *United States v. Sanchez*, W-21-CR-00213-ADA, 2022 WL 17815116, at *3 (W.D. Tex. Dec. 19, 2022) (holding that Section 922(g)(3) is "consistent with this Nation's historical tradition of firearm regulation"); *Fried*, 2022 WL 16731233, at *7 ("At bottom, the historical tradition of keeping guns from those the government fairly views as dangerous—like alcoholics and the mentally ill—is sufficiently analogous to modern laws keeping guns from habitual users of controlled substances .... The challenged laws are consistent with the history and tradition of this Nations' [sic] firearm regulation."); *United States v. Seiwert,* Case No. 20 CR 443, 2022 WL 4534605, at *2 (N.D. Ill. Sept. 28, 2022) (holding that Section "922(g)(3) is relevantly similar to regulations aimed at preventing dangerous or untrustworthy persons from possessing and using firearms, such as individuals convicted of felonies or suffering from mental illness"); *United*

*States v. Daniels*, 610 F.Supp.3d 892, 897 (S.D. Miss. 2022) (finding Section 922(g)(3) constitutional after determining that "analogous statutes which purport to disarm persons considered a risk to society—whether felons or alcoholics—were known to the American legal tradition").

**{¶24}** *United States v. Ledvina*, 2023 WL 5279470, *6.

**{¶25}** Based on the substantial authority finding regulations similar to R.C. 2923.13(A)(3) are not facially unconstitutional, we find Appellant has not demonstrated the statute is obviously unconstitutional, and the trial court therefore did not commit plain error.

**{¶26}** We also find Appellant has not demonstrated plain error as to his argument the statute is unconstitutional as applied to him. At the hearing on his motion to dismiss, which was combined with the suppression hearing, the State presented evidence Appellant had prior convictions in 1997 of two counts of possession of cocaine and one count of aggravated funding of drug trafficking. In 2010 Appellant was convicted of two counts of aggravated trafficking in methamphetamine and illegal assembly to manufacture drugs. In 2019, Appellant was convicted of aggravated trafficking in methamphetamine and aggravated possession of methamphetamine. In the context of Fourth Amendment jurisprudence and the right to frisk a suspect, Ohio has long recognized the connection between gun violence and drug trafficking. *See, e.g., State v. Evans*, 67 Ohio St.3d 405, 407, 618 N.E.2d 162, 165 (1993); *State v. Minyoung*, 3rd Dist. Van Wert No. 15-11-11, 2012-Ohio-411; *State v. Wiegand*, 5th Dist. Licking No. 17-CA-24, 2017-Ohio-9143. With multiple felony convictions for trafficking and activities related

to trafficking, we find the trial court did not commit plain error in failing to find R.C. 2923.13(A)(3) unconstitutional as applied to Appellant.

{¶27} Appellant next argues the Ohio Constitution provides expanded rights to those found in the United States Constitution. Again, Appellant failed to raise this argument in the trial court, and we therefore must find plain error to reverse.

{¶28} The language of the Second Amendment to the United States Constitution provides, ""[a] well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." Article I, Section 4 of the Ohio Constitution sets forth a similar guarantee: "The people have the right to bear arms for their defense and security; but standing armies, in time of peace, are dangerous to liberty, and shall not be kept up; and the military shall be in strict subordination to the civil power." In the past, the Ohio Supreme Court has distinguished its analysis of claims arising under the Ohio Constitution on the basis that, unlike the United States Constitution, Ohio's Constitution guaranteed the right to bear arms to individual citizens. *Arnold v. Cleveland*, 67 Ohio St.3d 35, 616 N.E.2d 163 (1993). However, even prior to *Bruen*, the United States Supreme Court has found the Second Amendment likewise guarantees the right to bear arms to individual citizens. *See District of Columbia v. Heller*, 554 U.S. 570, 595, 128 S.Ct. 2783, 171 L.Ed.2d 637 (2008) (holding the Second Amendment guarantees the right to keep and bear arms to individuals); *McDonald v. Chicago*, 561 U.S. 742, 750, 130 S.Ct. 3020, 177 L.Ed.2d 894 (2010) (holding the Second Amendment is fully applicable to the States by application of the Fourteenth Amendment). Because the United States Constitution now equally protects the right of the individual to bear arms, we see no obvious distinction between the Ohio Constitution and the United

States Constitution. For the reasons stated in our consideration of Appellant's claims under the United States Constitution, we find Appellant has not demonstrated R.C. 2923.13(A)(3) is obviously unconstitutional under the Ohio Constitution, and we therefore find no plain error.

{¶29} Finally, in his brief Appellant argues his convictions on both count one (having a weapon under disability) and count four (possessing a defaced weapon), as well as the forfeiture specification, should be reversed because R. C. 2923.13(A)(3) is unconstitutional. Brief of Appellant, p. 15. However, Appellant did not assign error alleging R.C. 2923.201(A)(2), possessing a defaced weapon, is unconstitutional, nor did he argue the statute is unconstitutional in his initial brief. For the first time in his reply brief, Appellant argues R.C. 2923.201(A)(2) is unconstitutional. We will not consider an issue raised for the first time in a reply brief. *State v. Quarterman*, 140 Ohio St.3d 464, 2014-Ohio-4034, 19 N.E.3d 900, ¶ 18.

{¶30} In summary, we find Appellant has failed to demonstrate plain error, as R.C. 2923.13(A)(3) is not obviously unconstitutional either facially or as applied to Appellant. The first assignment of error is overruled.

II.

{¶31} In his second assignment of error, Appellant argues the trial court erred in denying his motion to suppress because his consent to allow the officers to enter the house was not voluntary. Appellant argues he only consented to officers entering the residence because he was under duress from his medical emergency, and needed to have cold water, medicine, and air-conditioning because of his medical situation.

**{¶32}** Appellate review of a motion to suppress presents a mixed question of law and fact. *State v. Burnside*, 100 Ohio St.3d 152, 154-155, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8. When ruling on a motion to suppress, the trial court assumes the role of trier of fact and is in the best position to resolve questions of fact and to evaluate witness credibility. *See State v. Dunlap*, 73 Ohio St.3d 308,314, 1995-Ohio-243, 652 N.E.2d 988; *State v. Fanning*, 1 Ohio St.3d 19,20, 437 N.E.2d 583 (1982). Accordingly, a reviewing court must defer to the trial court's factual findings if competent, credible evidence exists to support those findings. *See Burnside, supra; Dunlap, supra; State v. Long*, 127 Ohio App.3d 328, 332, 713 N.E.2d 1(4th Dist. 1998); *State v. Medcalf,* 111 Ohio App.3d 142, 675 N.E.2d 1268 (4th Dist. 1996). However, once this Court has accepted those facts as true, it must independently determine as a matter of law whether the trial court met the applicable legal standard. *See Burnside, supra, citing State v. McNamara,* 124 Ohio App.3d 706, 707 N.E.2d 539(4th Dist. 1997); *See, generally, United States v. Arvizu*, 534 U.S. 266, 122 S.Ct. 744, 151 L.Ed.2d 740(2002); *Ornelas v. United States*, 517 U.S. 690, 116 S.Ct. 1657, 134 L.Ed.2d 911(1996). That is, the application of the law to the trial court's findings of fact is subject to a de novo standard of review. *Ornelas, supra.* Moreover, due weight should be given "to inferences drawn from those facts by resident judges and local law enforcement officers." *Ornelas, supra* at 698, 116 S.Ct. at 1663.

**{¶33}** A warrantless search based upon a suspect's consent is valid if his consent is voluntarily given, and not the result of duress or coercion, either express or implied. *Schnecklofth v. Bustamonte* (1973), 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973); *State v. Dunwoody*, 5th Dist. Licking No. 2004CA49, 2005-Ohio-219, ¶ 18. The

voluntariness of a consent is a question of fact determined from the totality of the circumstances. *Id.*

**{¶34}** As noted by the trial court, the evidence presented at trial through the testimony of Detective Green, and the evidence presented via the audio recordings of the detective's conversation with Appellant at the scene, demonstrate Appellant did not request treatment, nor did he take any medication upon entering the home. He did not take the opportunity to leave with the EMTs for treatment. Although Appellant initially said police could not enter the home, he relented quickly when Det. Green asked to follow Appellant inside so Appellant could get a drink of water. After consenting to the search of the home, Appellant personally selected the officers he would allow inside the home with Det. Green. The trial court specifically found:

> The defendant was never subject to duress or coercion, nor did he appear to be intimidated or coerced by any show of authority. In fact, it appeared the defendant was the person attempting to coerce the medical staff and law enforcement officers into behaving in the manner in which he wished them behave.

**{¶35}** Judgment Entry, April 14, 2023, A-3.

**{¶36}** This finding of the trial court is supported by the record before this Court on appeal. We find the trial court did not err in overruling Appellant's motion to suppress.

**{¶37}** The second assignment of error is overruled.

III.

**{¶38}** In his third assignment of error, Appellant argues trial counsel was ineffective for failing to file a motion to suppress challenging the basis for the traffic stop. Appellant argues the State did not present video evidence to prove the driver of the pickup truck did not use a turn signal, and the allegation was based solely on the officer's alleged observation of the failure to use a signal.

**{¶39}** A properly licensed attorney is presumed competent. *State v. Hamblin*, 37 Ohio St.3d 153, 524 N.E.2d 476 (1988). Therefore, in order to prevail on a claim of ineffective assistance of counsel, Appellant must show counsel's performance fell below an objective standard of reasonable representation and but for counsel's error, the result of the proceedings would have been different. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674(1984); *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989). In other words, Appellant must show counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied upon as having produced a just result. *Id.*

**{¶40}** While no video evidence was presented to prove the driver of the pickup truck failed to use a turn signal, thus justifying the traffic stop of the vehicle in which Appellant was riding, the State had no obligation to demonstrate the legality of the traffic stop because it was not challenged by Appellant in the trial court. Further, even in the absence of video evidence, the trial court could find from the testimony of the officer the driver failed to use a left turn signal. While Appellant testified at trial the driver used a turn signal, the trial court, as the judge of credibility, could find the traffic infraction occurred based solely on the testimony of the officer. We find Appellant has not

demonstrated a reasonable probability had trial counsel filed a motion to suppress based on the validity of the traffic stop for failure to use a turn signal, the motion would have been granted. Appellant has accordingly not demonstrated trial counsel was ineffective.

{¶41} The third assignment of error is overruled.

IV.

{¶42} In his fourth assignment of error, Appellant argues the judgment convicting him of receiving stolen property and aggravated possession of drugs are against the manifest weight of the evidence.

{¶43} In determining whether a verdict is against the manifest weight of the evidence, the appellate court acts as a thirteenth juror and "in reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses, and determines whether in resolving conflicts in evidence the jury 'clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *State v. Thompkins*, 78 Ohio St. 3d 380, 387, 1997-Ohio-52, 678 N.E.2d 541, *quoting State v. Martin*, 20 Ohio App. 3d 172, 175, 485 N.E.2d 717 (1983).

{¶44} **Receiving Stolen Property:** Appellant argues the jury lost its way in finding he knowingly possessed the firearm found in his dresser drawer. He further argues the evidence did not support a finding he knew or had reason to know the firearm was stolen.

{¶45} Appellant was convicted of receiving stolen property in violation of R.C. 2913.51(A), which provides, "No person shall receive, retain, or dispose of property of another knowing or having reasonable cause to believe that the property has been obtained through commission of a theft offense."

{¶46} The testimony at trial demonstrated the firearm was recovered from a dresser drawer in Appellant's bedroom. Det. Green testified during the search of the house, Appellant said, "Todd, you better go over and search that dresser." Tr. (I) 131. The State called Det. Green to testify again in rebuttal, and the detective again testified Appellant told him to check the dresser. After finding the gun, the detective told Appellant he wasn't allowed to own a gun. Det. Green testified Appellant responded, "I needed the gun because you guys won't protect me." Tr. (II)285. When asked to clarify what he meant by this statement, Appellant responded, "Well, I got people out here all night stealing stuff out of my back yard and stuff like that." *Id.* While at trial Appellant testified the gun did not belong to him and he did not have control over the gun, we find the jury did not lose its way in believing the testimony of Det. Green and concluding Appellant possessed the firearm.

{¶47} Appellant also argues the mere fact the serial number was filed off the weapon is insufficient to demonstrate he knew or had reasonable cause to believe it was stolen. He argues he may not have noticed the serial number was filed off the gun.

{¶48} Det. Green testified when he took the gun out of the dresser, he immediately noticed the serial number was filed off the gun, and asked Appellant if the gun was stolen. The detective testified, "[A]nybody in their right mind that handled this and saw this filed off gun would know it's stolen." Tr. (I)130. Further, Appellant did not testify he failed to notice the serial number was filed off the gun, but instead Appellant testified the serial number was visible when Det. Green took the gun out of the dresser, and Det. Green was lying when he said the serial number was not on the butt of the gun the day it was recovered. Tr. (II)266. Although the jury apparently rejected Appellant's claim the

number was on the gun when recovered by police, from Appellant's testimony, the jury could infer Appellant knew where the serial number on a firearm was located, and therefore would be aware if the number was filed off, and by implication had reasonable cause to believe the firearm was stolen. We find the jury did not lose its way in disbelieving Appellant's claim the serial number was filed off the gun after it came into the possession of the police, and drawing the inference Appellant was aware the serial number was not on the gun. We find the jury could conclude from all of the evidence surrounding Appellant's possession of the firearm, including Appellant's own testimony, Appellant knew or had reasonable cause to believe the gun was stolen.

{¶49} The judgment convicting Appellant of receiving stolen property is not against the manifest weight of the evidence.

{¶50} **Aggravated Possession of Drugs – July 7, 2022:** Appellant argues the jury lost its way in concluding he possessed the drugs found in the vehicle on July 7, 2022, as he was merely a passenger in the vehicle.

{¶51} Appellant was convicted of aggravated possession of drugs in violation of R.C. 2925.11(A), which provides, "No person shall knowingly obtain, possess, or use a controlled substance or a controlled substance analog."

{¶52} Appellant argues the drugs were found on the driver's side of the vehicle. Appellant mischaracterizes the evidence. Although the drugs were initially seen by an officer looking under the seat from the driver's side of the truck, the drugs were actually located between the center console and the passenger seat, where Appellant had been seated. Further, Appellant admitted to Det. Green the drugs in the car were his, and totaled about "two grams or so." Tr. (I) 134. Although Appellant testified his admission

to owning the drugs was sarcasm and not a confession, we find the jury did not lose its way in finding Appellant possessed the drugs found in the truck on July 7, 2022. The judgment convicting Appellant of aggravated possession of drugs is not against the manifest weight of the evidence.

{¶53} **Aggravated Possession of Drugs – September 14, 2022:** Appellant argues the jury lost its way in finding the bulk amount of the drugs found on his person on September 14, 2022, was 3 grams or more. He argues his reweighing of the drugs by an independent lab showed the drugs weighed around 2.8 grams, less than the 3.04 weight determined by the State's lab.

{¶54} Ashley Nutter, the forensic scientist who tested the drugs at the Central Ohio Regional Crime Lab, testified after weighing the bulk amount of the material, a small amount is taken out and placed in a test tube to be tested. Tr. (II)222. Therefore, the bulk weight would decrease. Further, the drugs taken from Appellant on September 14 were in two separate bags, one weighing 1.3473 grams, and one weighing 1.6924 grams, for a total of 3.0397 grams. Nutter testified a bit of the material had to be removed from each of the bags for analysis, thus reducing the bulk amount.

{¶55} Nutter testified when Roger Pryor from the outside lab came in for the reweigh, he was not able to get everything out of the bag. She testified after she samples an item, she places it into a Ziploc bag, and throughout the process, some of the substances tend to stick to the bag from the static in the bag, making it nearly impossible to get everything out of the bag for the reweigh. Roger Pryor, who performed the reweigh, testified when you reweigh as opposed to the original, some of the sample has been taken for testing, and a negligible amount is left inside the container. He testified this could

explain the difference between the original weight of the methamphetamine in this case, and the lower weight on his reweigh. Pryor also testified he found Nutter's findings scientifically valid in this case. We find the jury did not lose its way in finding the original weight of the drugs, which exceeded three grams, was valid. The judgment is not against the manifest weight of the evidence.

{¶56} The fourth assignment of error is overruled. The judgment of the Licking County Common Pleas Court is affirmed.


By: Hoffman, P.J.
Baldwin, J. concurs
King, J. concurs separately

*King, J. concurs separately*,

{¶ 57} Although I agree with Judge Hoffman's opinion on the second, third, and fourth assignments of errors, I concur in judgment only because I view the Second Amendment issue in the first assignment of error differently. The trial attorney's argument below was based on R.C. 2923.13(A)(2), not (A)(3), thus denying the state an opportunity to carry its burden under *New York State Rifle & Pistol Association, Inc. v. Bruen,* 597 U.S. 1, 142 S.Ct. 2111, 213 L.Ed.2d 387 (2022). Moreover, ineffective assistance of trial counsel was not assigned as an error on this issue. While I believe, for the reasons stated below, there is a viable argument that R.C. 2923.13(A)(3), as applied to appellant, is unconstitutional, I do not find it rises to the level of plain error in this case.

{¶ 58} As described in the lead opinion, a .38 caliber firearm was found in appellant's dresser drawer. This firearm was found after appellant consented to a search of his home. Because the Second Amendment applies to the states through the Fourteenth Amendment, we are required to apply Supreme Court precedent.

{¶ 59} In *Bruen*, the Supreme Court explicitly rejected a two-step test that had become common in the circuit courts of appeals. The Court also rejected any test that included a means-ends scrutiny. *Bruen* at 17. Instead, the Supreme Court held the Second Amendment required a different analysis (*Id.*):

* * * [W]e hold that when the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. To justify its regulation, the government may not simply posit that the regulation promotes an important interest. Rather, the government must

demonstrate that the regulation is consistent with this Nation's historical tradition of firearm regulation. Only if a firearm regulation is consistent with this Nation's historical tradition may a court conclude that the individual's conduct falls outside the Second Amendment's "unqualified command." *Konigsberg v. State Bar of Cal.*, 366 U.S. 36, 50, n. 10, 81 S.Ct. 997, 6 L.Ed.2d 105 (1961).

{¶ 60} Thus, the threshold question is whether appellant's conduct is presumptively protected by the Second Amendment. We are required to answer this question in the affirmative. Previously, the Supreme Court held that the Second Amendment permitted individuals to possess a handgun inside the home. *District of Columbia v. Heller*, 554 U.S. 570, 635, 128 S.Ct. 2783, 171 L.Ed.2d 637 (2008). Here, the handgun was found stored inside appellant's home. But for R.C. 2923.13(A)(3), there would be no serious question appellant was entitled to store a handgun in his home. Prior to *Bruen*, this court would have been obligated to employ intermediate scrutiny. *See State v. Weber*, 163 Ohio St.3d 125, 2020-Ohio-6832, 168 N.E.3d 468, **¶ 13. But this test did not survive *Bruen*.**

{¶ 61} Instead, when a defendant challenges a regulation such as R.C. 2923.13(A)(3), the government is obligated to defend the regulation through evidence that shows the challenged regulation is "consistent with this Nation's historical tradition of firearm regulation." *Bruen*, 597 U.S. at 17, 142 S.Ct. 2111, 213 L.Ed.2d 387. *See also State v. Parker*, 5th Dist. Licking No. 23CA00009, 2023-Ohio-2127, ¶ 29, and *State v. Philpotts*, 8th Dist. Cuyahoga No. 107374, 2023-Ohio-213, **¶ 4.**

{¶ 62} **Here, appellant was charged and then convicted under the "Having weapons while under disability" statute,** R.C. 2923.13(A)(3), **which states:**

(A) Unless relieved from disability under operation of law or legal process, no person shall knowingly acquire, have, carry, or use any firearm or dangerous ordnance, if any of the following apply:

(3) The person is under indictment for or has been convicted of any felony offense involving the illegal possession, use, sale, administration, distribution, or trafficking in any drug of abuse or has been adjudicated a delinquent child for the commission of an offense that, if committed by an adult, would have been a felony offense involving the illegal possession, use, sale, administration, distribution, or trafficking in any drug of abuse.

{¶ 63} **In reviewing the constitutionality of 18 U.S.C. 922(g)(1), which is a federal analogue to our statute, the Third Circuit sitting en banc thoroughly reviewed the historical tradition in disarming citizens who were not "law-abiding" and found the government did not carry its burden.** *Range v. Attorney General United States of America*, 69 F.4th 96, 98 (3d Cir.2023). The Third Circuit held that those who commit petty misdemeanors or summary offenses do not lose their right to bear firearms. *Id.* at 102. Two aspects of the court's holdings are relevant here: whether the Second Amendment is limited to only law-abiding, responsible citizens, and whether the similar statutory restriction was consistent with the Nation's tradition.

{¶ 64} In addressing the first issue, the court went on to hold that at the time of the framing of the Constitution, felonies were such a serious class of crimes they were punishable by estate forfeiture and death. *Id.* It also cited recent Supreme Court precedent holding "a felon is not always more dangerous than a misdemeanant." *Id.* citing *Lange v. California*, --- U.S. ---, 141 S.Ct. 2011, 2020, 210 L.Ed.2d 486 (2021). The court's purpose in doing so was to demonstrate that per se categorical approaches based on legislative labels was "hopelessly vague" and such deference would contravene *Heller's* reasoning that "the enshrinement of constitutional rights necessarily takes certain policy choices off the table." *Range* at 103, quoting *Heller,* 554 U.S. at 554, 128 S.Ct. 2783, 171 L.Ed.2d 637. *See also Bruen*, 597 U.S. at 26, 142 S.Ct. 2111, 213 L.Ed.2d 387 (warning against "judicial deference to legislative interest balancing"). This led to the court's conclusion that the "people" who are protected by the Second Amendment are not exclusively "law-abiding, responsible citizens." *Range* at 103*.*

{¶ 65} After concluding the defendant was not categorically excluded from his right to bear arms, the court in *Range* turned to evaluating the evidence the government produced to support the statute. The version at issue precluded any individual convicted of a crime allowing for punishment of imprisonment of one year or more from possessing a firearm. *Id.* at 104. The prior version of the statute had only precluded a limited set of violent criminals from possessing firearms. *Id.* The court went on to observe that Founding-era laws might provide for firearm forfeiture without generally affecting a defendant's right to keep and bear arms. *Id.* at 105.

{¶ 66} Finally, the court addressed the government's argument implicitly adopted by the lead decision, i.e., "an argument from authority." The Third Circuit acknowledged

there were cases that did not employ a means-ends test to uphold 18 U.S.C. 922(g)(1), but observed district courts are bound by their circuit's precedent and *Bruen* was a major change in precedent. *Id.* at 106.

{¶ 67} The fact that the government in *Range* failed to find appropriate historical evidence suggests there indeed is an absence of historical evidence for legislatures to create broad categories of citizens subject to disarmament based broadly on a prior illegal act. This makes the breadth of R.C. 2923.13(A)(3) suspect, but the state of Ohio did not get the opportunity to meet its burden. Accordingly, it is our obligation to consider the scope of Second Amendment protection in relation to the evidence presented by the state and its impact on the statute at hand. In an appropriately framed challenge, the state may be able to argue that Ohio's statute is drawn narrower and thus is constitutional, unlike the federal analog.

{¶ 68} Though, there is reason to think that might not be the case. In *United States v. Daniels*, 77 F.4th 337, 339 (5th Cir.2023), the Fifth Circuit considered the constitutionality of 18 U.S.C. 922(g)(3) which prohibits an unlawful user of controlled substances from possessing a firearm. In finding the statute unconstitutional, the crux of the Fifth Circuit's holding was that there was no history of disarming those who use substances at one point but possessing a firearm arm at a different point. *Id.* at 340. The court summarized its holding as follows: "In short, our history and tradition may support some limits on an intoxicated person's right to carry a weapon, but it does not justify disarming a sober citizen based exclusively on his past drug usage. Nor do more generalized traditions of disarming dangerous persons support this restriction on nonviolent drug users." *Id.*

{¶ 69} Similar to the Third Circuit, the Fifth Circuit concluded that the disqualifying conduct (in *Range*, fraud, and in *Daniels*, marijuana use) did not remove the presumption the defendant was entitled to possess a firearm. *Id.* at 342. The Fifth Circuit acknowledged there was some difficulty in applying the "historical test" because the drug trade was not present in its modern form. *Id.* at 344. Ultimately, the government argued to sustain the statute from three broad categories of analogues: "(1) statutes disarming intoxicated individuals, (2) statutes disarming the mentally ill or insane, and (3) statutes disarming those adjudged dangerous or disloyal." *Id.*

{¶ 70} After finding the first two categories provided no support for the statute, the Fifth Circuit turned to the issue of dangerousness. The court first observed "no one piece of historical evidence suggests that when the Founders ratified the Second Amendment, they authorized Congress to disarm anyone it deemed dangerous." *Id.* at 350. In response to this evidence of absence, the government relied on evidence disarming political dissidents and religious minorities. *Id.* at 350-351.

{¶ 71} The Fifth Circuit was willing to assume these restrictions supported a prohibition on dangerous persons, but that assumption still failed to answer the question the Third Circuit similarly wrestled with, "dangerousness" can be ascertained at varying levels of abstractions; so, how should it be defined for purposes of the Second Amendment? *Id.* at 353. The search for an answer ultimately brought the court back to analyzing the history of regulatory traditions. *Id.* at 354. The court rejected that a general notion of dangerousness allowed it to sustain a regulation. *Id.* And, again, the government failed to demonstrate a history of regulation that would support denying a marijuana user the right to possess a firearm. *Id. See also United States v. Rahimi*, 61 F.4th 443, 448

(5th Cir.2023), *cert. granted,* 143 S.Ct. 2688, 216 L.Ed.2d 1255 (2023) (holding 18 U.S.C. 922(g)(8) unconstitutional under a facial challenge).

{¶ 72} Returning to the case at hand, an application of *Heller*, absent any other constitutionally permissible restriction, means Jenkins would have the right to possess a firearm in his home. By its own terms, R.C. 2923.13(A)(3) does not carve out an exception for keeping a firearm in the home; instead, it is complete prohibition. At a minimum, the facts before us (if they had been probably preserved below) present an as-applied challenge. Consistent with *Range* and *Daniels*, the state would have to demonstrate a reasonably close fit between the history of regulation of firearms and section (A)(3) as applied to Jenkins. *Bruen* holds that judges are to employ reasoning by analogy, and when doing so, judges are to consider "how and why the regulations burden a law-abiding citizen's right to armed self-defense." *Bruen,* 597 U.S. at 29, 142 S.Ct. 2111, 213 L.Ed.2d 387 In contrast to the analysis mandated by *Bruen*, a mere general allegation from the state that someone who is not a "law-abiding citizen" may be denied the right to possess a firearm inside the home under R.C. 2923.13(A)(3) will not prevail.

{¶ 73} Previously, this court addressed an as-applied challenge to R.C. 2923.13(A)(1) under *Bruen. Parker,* 5th Dist. Licking No. 23CA00009, 2023-Ohio-2127, ¶ 21. The trial court in *Parker* granted a motion to dismiss, which the state subsequently appealed. *Id.* ¶ 12-14. This court found the state failed to meet its burden and thus overruled the assignment of error. *Id.* ¶ 36. The same could be said here, except that the state was denied the opportunity to create such a record because trial counsel inexplicably argued (A)(2) was unconstitutional, despite appellant being charged under

(A)(3). Appellant here cannot create the circumstance that denies the government its opportunity to carry its burden and then benefit from that action on appeal.

{¶ 74} Accordingly, I concur in judgment only.