[Cite as *State v. Storms*, 2024-Ohio-1954.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. C-230593 |
| | | TRIAL NO. B-2301954 |
| Plaintiff-Appellee, | : | |
| vs. | : | |
| | | *O P I N I O N.* |
| CARL STORMS, | : | |
| Defendant-Appellant. | : | |

Criminal Appeal From: Hamilton County Court of Common Pleas

Judgment Appealed From Is: Reversed and Cause Remanded

Date of Judgment Entry on Appeal: May 22, 2024

*Melissa A. Powers*, Hamilton County Prosecuting Attorney, and *Norbert Wessels*, Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*Michael J. Trapp* for Defendant-Appellant.

**BOCK, Presiding Judge.**

{¶1} The state charged defendant-appellant Carl Storms with carrying a concealed weapon ("CCW"). Storms, who was on community control at the time of his CCW arrest, moved to dismiss the indictment, arguing that applying the CCW statute to him violated his Second Amendment rights under *New York State Rifle & Pistol Assn. v. Bruen*, 597 U.S. 1, 142 S.Ct. 2111, 213 L.Ed.2d 387 (2022). The state argued that *Bruen* did not apply, and the trial court denied Storms's motion without applying *Bruen*.

{¶2} On appeal, the state concedes that *Bruen* applies to Storms's motion. We therefore reverse Storms's conviction and remand the cause to the trial court to determine whether Ohio's firearm regulation under the CCW statute is part of the historical tradition that delimits the outer bounds of the right to keep and bear arms.

## I.    Facts and Procedure

### A. A prior conviction and outstanding warrant prevented Storms from carrying a concealed weapon under Ohio law

{¶3} In May 2022, Storms pleaded guilty to attempted failure to comply. The trial court sentenced him to two years of community control and ordered him to complete mental-health counseling. After Storms failed to report to probation, the trial court issued a warrant for his arrest. When Storms was arrested in April 2023, he had a concealed firearm in his possession.

{¶4} In May 2023, the state indicted Storms on a single count of CCW in violation of R.C. 2923.12(A)(2). In August 2023, Storms filed a Crim.R. 12 motion to dismiss. Citing *Bruen*, Storms argued that the CCW charge against him violated his rights under the Second and Fourteenth Amendments to the United States Constitution and Article I, Section 4 of the Ohio Constitution. In his motion, Storms

noted that while he was otherwise permitted to possess a firearm, the state alleged that he was prevented from carrying a concealed weapon due to his being a "fugitive from justice." Storms argued that the plain text of the Second Amendment presumptively permitted him to carry a concealed weapon and that there was no historical tradition consistent with application of the CCW statute to him. The state did not respond to Storms's motion.

### B. The trial court did not apply *Bruen*

{¶5} The trial court held arguments on Storms's motion to dismiss. Storms argued that *Bruen* set out the applicable standard and that the plain text of the Second Amendment covered his conduct. He maintained the burden had therefore shifted to the state to affirmatively prove that Storms's charge under the CCW statute was supported by a historical tradition of firearms regulation.

{¶6} The state, however, repeatedly asserted that *Bruen* did not apply to Storms as *Bruen* was limited to "law-abiding citizens." The state claimed that it had no burden to establish historical support for the CCW statute and presented no evidence in support of the law. Instead, the state argued that Storms was prohibited under Ohio law from carrying a concealed weapon due to his felony conviction and his being a "fugitive from justice."

{¶7} The trial court did not address Storms's *Bruen* argument. Instead, it denied Storms's motion to dismiss because he was not a "qualifying adult" under R.C. 2923.111 due to his felony conviction and status as fugitive from justice. Therefore, the trial court determined only that Storms was prohibited from having a concealed weapon under Ohio law. The trial court held that the state "fulfilled their burden of showing that the defendant was a fugitive from justice. He is a convicted felon."

3

{¶8} When Storms asked for clarification from the trial court as to the lack of historical tradition regarding prohibiting "fugitives from justice" from possessing concealed weapons, the court replied, "it would be the fact that he was on probation. * * * He tested positive for drug screens. And then he didn't appear for any of his appointments and a warrant was out for his arrest."

{¶9} After the trial court denied Storms's motion, he pleaded no contest to the CCW charge. The trial court sentenced Storms to community control and ordered the firearm to be forfeited to the state. Storms has appealed.

## II. Law and Analysis

### A. Assignment of error: The trial court erred by denying the motion to dismiss

#### 1. Standard of Review

{¶10} An appellate court reviews de novo the trial court's denial of a motion to dismiss based on a constitutional challenge to a statute. *See State v. Campbell*, 1st Dist. Hamilton No. C-120871, 2013-Ohio-5612, ¶ 3. Storms asserts an as-applied constitutional challenge to Ohio's CCW statute. Therefore, he must show that the application of the statute in his case violates his constitutional rights. *See State v. Grevious*, 172 Ohio St.3d 171, 2022-Ohio-4361, 223 N.E.3d 323, ¶ 18.

#### 2. The Second Amendment under *Bruen*

{¶11} The Second Amendment to the United States Constitution, made applicable to the states through the Fourteenth Amendment, reads, "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." *McDonald v. City of Chicago*, 561 U.S. 742, 750, 130 S.Ct. 3020, 177 L.Ed.2d 894 (2010). The Supreme Court of the United States has held that the Second Amendment protects the right of an "ordinary law-abiding

4

citizen" to carry a firearm for self-defense. *Bruen*, 597 U.S. at 9, 142 S.Ct. 2111, 213 L.Ed.2d 387; *see District of Columbia v. Heller*, 554 U.S. 570, 635, 128 S.Ct. 2783, 171 L.Ed.2d 637 (2008).

{¶12} In *Bruen*, the Supreme Court set out the test courts must apply when analyzing any Second Amendment challenge:

> When the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. The government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation. Only then may a court conclude that the individual's conduct falls outside the Second Amendment's "unqualified command."

*Bruen* at 24.

{¶13} Applying the first step of its analysis, the *Bruen* Court stated that the Second Amendment works to "guarantee the individual right to possess and carry weapons in case of confrontation." *Id.* at 32. The Court noted that "*Heller* further confirmed that the right to 'bear arms' refers to the right to 'wear, bear, or carry * * * upon the person or in the clothing or in a pocket, for the purpose * * * of being armed and ready for offensive or defensive action in a case of conflict with another person.' " *Id.*, quoting *Heller* at 584. In *Heller*, the Court observed that there is "a strong presumption that the Second Amendment right is exercised individually and *belongs to all Americans*." (Emphasis added.) *Heller* at 581. In *Bruen*, the Court held that the Second Amendment's plain text covered the regulated conduct in that case, which was "carrying handguns publicly for self-defense." *Bruen* at 31.

**{¶14}** If the challenger meets the burden to show that the conduct at issue is covered by the Second Amendment's plain text, the burden shifts to the state to "affirmatively prove that its firearms regulation is part of the historical tradition that delimits the outer bounds of the right to keep and bear arms." *Bruen*, 597 U.S. at 19, 142 S.Ct. 2111, 213 L.Ed.2d 387. Confronted with modern regulations "that were unimaginable at the founding," the "historical inquiry that courts must conduct will often involve reasoning by analogy." *Id.* at 28. Courts must consider whether the challenged regulation and the historical analogues provided by the state are "relevantly similar." *Id.* at 29.

**{¶15}** While not purporting to "provide an exhaustive survey of the features that render regulations relevantly similar under the Second Amendment," the *Bruen* Court provided two metrics to be considered: "how and why the regulations burden a law-abiding citizen's right to armed self-defense." *Id.* Because " 'individual self-defense is "the central component" of the Second Amendment Right,' * * * whether modern and historical regulations impose a comparable burden on the right of armed self-defense and whether that burden is comparably justified are ' "central" ' considerations when engaging in an analogical inquiry." *Id.*, quoting *McDonald*, 561 U.S. at 767, 130 S.Ct. 3020, 177 L.Ed.2d 894.

**{¶16}** The *Bruen* Court stated that its test was "neither a regulatory straitjacket nor a regulatory blank check." *Id.* at 30. But *Bruen*'s test does require courts to straddle a fine line:

> On the one hand, courts should not "uphold every modern law that remotely resembles a historical analogue," because doing so "risk[s] endorsing outliers that our ancestors would never have accepted."

*Drummond v. Robinson*, 9 F.4th 217, 226 (CA3 2021). On the other hand, analogical reasoning requires only that the government identify a well-established and representative historical analogue, not a historical twin. So even if a modern-day regulation is not a dead ringer for historical precursors, it still may be analogous enough to pass constitutional muster.

*Id.*

{¶17} In applying *Bruen*'s second step, courts should employ a "historical inquiry," relying on " 'various evidentiary principles and default rules' to resolve uncertainties" that courts should resolve "based on the historical record compiled by the parties." *Bruen* at 25, 142 S.Ct. 2111, 213 L.Ed.2d 387, fn. 6. The burden falls solely on the state to create this record—courts should not "sift the historical materials for evidence to sustain the state's burden." *Id.* at 60.

{¶18} Finally, the *Bruen* Court emphasized that historical analogues existing at or around the time of the passage of the Second and Fourteenth Amendments provided stronger support for a challenged regulation because "when it comes to interpreting the Constitution, not all history is created equal. 'Constitutional rights are enshrined with the scope they were understood to have when the people adopted them.' " *Id.* at 34, quoting *Heller*, 554 U.S. at 634, 128 S.Ct. 2783, 171 L.Ed.2d 637. "The Second Amendment was adopted in 1791; the Fourteenth in 1868." *Id.*

### 3. Ohio's CCW law

{¶19} Storms was convicted of CCW in violation of R.C. 2923.12(A)(2), which provides that "[n]o person shall knowingly carry or have, concealed on the person's person or concealed ready at hand, any of the following * * * (2) A handgun other than

a dangerous ordnance." But R.C. 2923.12(A)(2) "does not apply to any person who has been issued a concealed handgun license that is valid at the time of the alleged carrying or possession of a handgun." R.C. 2923.12(C)(2).

{¶20} In 2022, the General Assembly enacted R.C. 2923.111, which states that a "qualifying adult" is not required to obtain a license to carry a concealed handgun "that is not a restricted firearm." R.C. 2923.111(B)(1). A "qualifying adult" is a person who (1) is at least 21 years old; (2) is not prohibited from possessing a firearm under federal or Ohio law; and (3) satisfies the relevant criteria under R.C. 2923.125(D)(1), which governs applications for CCW licenses. R.C. 2923.111(A)(2)(a)-(c).

{¶21} Qualifying adults are treated as though they possessed a concealed handgun license and may carry a concealed handgun "anywhere in this state in which a person who has been issued a concealed handgun license may carry a concealed handgun." R.C. 2923.111(B)(2) and (3). And under the CCW statute, a qualifying adult who "is carrying or has, concealed on the person's person or ready at hand, a handgun that is not a restricted firearm shall be deemed to have been issued a valid concealed handgun license." R.C. 2923.111(C)(1). Thus, if Storms was a qualifying adult, he could not have been charged with a violation of R.C. 2923.12(A)(2).

{¶22} At the hearing, the state and trial court focused on two CCW license requirements under R.C. 2923.125(D) that Storms allegedly did not satisfy. Relevant here, a sheriff shall issue a concealed handgun license if "[t]he applicant is not a fugitive from justice," and "the applicant has not been convicted of or pleaded guilty to a felony or an offense under Chapter 2925., 3719., or 4729. of the Revised Code that involves the illegal possession, use, sale, administration, or distribution of or trafficking in a drug of abuse." R.C. 2923.125(D)(1)(c) and (e). The trial court found

8

that both requirements prevented Storms from being a qualifying adult under R.C. 2923.111.

### 4. The trial court did not apply the correct legal standard

**{¶23}** On appeal, the state concedes that *Bruen* sets out the applicable standard for Storms's motion, and that the burden shifted to it under *Bruen* to affirmatively prove that the CCW statute as applied to Storms is part of the historical tradition that delimits the outer bounds of the right to keep and bear arms.

**{¶24}** We agree that *Bruen* applies to Storms's challenge, and that Storms established that his conduct falls under the plain text of the Second Amendment. *See Bruen*, 597 U.S. at 32, 142 S.Ct. 2111, 213 L.Ed.2d 387, quoting *Heller*, 554 U.S. at 584, 128 S.Ct. 2783, 171 L.Ed.2d 637 ("*Heller* further confirmed that the right to 'bear arms' refers to the right to 'wear, bear, or carry * * * upon the person or in the clothing or in a pocket, for the purpose * * * of being armed and ready for offensive or defensive action in a case of conflict with another person.' "); see also *Range v. AG United States*, 69 F.4th 96, 98 (3d Cir.2023) (rejecting the government's argument that *Bruen* applies only to "law-abiding citizens" and holding that the Second Amendment's reference to "the people" refers to all people belonging to the national community, not a subset); *Kanter v. Barr*, 919 F.3d 437, 452-453 (7th Cir.2019) (Barrett, J., dissenting) (noting that excluding those with felony convictions from "the people" conflicts with the way other constitutional rights referencing "the people" are treated). Whatever relevance Storms's prior felony conviction, ongoing sentence for that conviction, or purported status as a fugitive from justice may have to the Second Amendment analysis falls under Bruen's second prong.

**{¶25}** Though Storms satisfied his burden under *Bruen*, the trial court did not apply *Bruen*. The trial court appears to have only determined that because Storms had a prior felony conviction and was also a fugitive from justice, he was excluded from the definition of "qualifying adult" and therefore prohibited from carrying a concealed weapon under Ohio law. But the trial court did not address the constitutionality of Ohio's CCW statute as applied to Storms under *Bruen*.

**{¶26}** We hold that the trial court erred when it failed to analyze whether the state affirmatively proved that Ohio's firearm regulation under the CCW statute is part of the historical tradition that delimits the outer bounds of the right to keep and bear arms. We therefore sustain Storms's assignment of error, reverse Storms's conviction, and remand this matter to the trial court. The trial court must apply *Bruen* and determine whether, as applied to Storms, Ohio's firearm regulation under the CCW statute is part of the historical tradition that delimits the outer bounds of the right to keep and bear arms.

### III.  Conclusion

**{¶27}** For the foregoing reasons, we sustain Storms's assignment of error, reverse the trial court's judgment, and remand the cause for further proceedings consistent with this opinion.

*Judgment reversed and cause remanded.*

**ZAYAS** and **WINKLER JJ.,** concur.

Please note:

The court has recorded its entry on the date of the release of this opinion.