[Cite as *State v. Thurmond*, 2025-Ohio-5328.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

|  |  |  |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. C-250035 |
|  |  | TRIAL NO. B-2304681 |
| Plaintiff-Appellee, | : |  |
|  |  |  |
| vs. | : |  |
|  |  | *JUDGMENT ENTRY* |
| ERIC THURMOND, | : |  |
|  |  |  |
| Defendant-Appellant. | : |  |

This cause was heard upon the appeal, the record, the briefs, and arguments.

For the reasons set forth in the Opinion filed this date, the judgment of the trial court is reversed in part and the appellant is discharged in part.

Further, the court holds that there were reasonable grounds for this appeal, allows no penalty, and orders that costs be taxed to plaintiff-appellee.

The court further orders that (1) a copy of this Judgment with a copy of the Opinion attached constitutes the mandate, and (2) the mandate be sent to the trial court for execution under App.R. 27.

**To the clerk:**

**Enter upon the journal of the court on 11/26/2025 per order of the court.**

**By:**_____
       **Administrative Judge**

[Cite as *State v. Thurmond*, 2025-Ohio-5328.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO


|  |  |  |  |
|---|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. | C-250035 |
|  |  | TRIAL NO. | B-2304681 |
| Plaintiff-Appellee, | : |  |  |
|  |  |  |  |
| vs. | : |  |  |
|  |  | *O P I N I O N* |  |
| ERIC THURMOND, | : |  |  |
|  |  |  |  |
| Defendant-Appellant. | : |  |  |


Criminal Appeal From: Hamilton County Court of Common Pleas

Judgment Appealed From Is: Reversed in Part and Appellant Discharged in Part

Date of Judgment Entry on Appeal: November 26, 2025


*Connie Pillich*, Hamilton County Prosecuting Attorney, and *Judith Anton Lapp,* Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*Michael J. Trapp*, for Defendant-Appellant.

**Bock, Judge.**

**{¶1}** In this appeal, we consider whether the State carried its burden to demonstrate that a law prohibiting defendant-appellant Eric Thurmond from possessing a firearm while under indictment for a drug offense is consistent with this Nation's historical tradition of firearm regulation.

**{¶2}** While trafficking and possessing-marijuana charges were pending against him, law enforcement found Thurmond with a firearm and charged him with having weapons while under disability ("WUD")—the disability was based on his being under indictment for the marijuana offenses. Thurmond moved to dismiss the WUD charge, arguing that it violated his rights under the Second Amendment to the United States Constitution. The trial court denied the motion and later convicted him.

**{¶3}** On appeal, Thurmond challenges his WUD conviction, arguing that the trial court erred in denying his motion to dismiss based on the Second Amendment. We agree and hold that the State failed to carry its burden, as announced in *New York State Rifle & Pistol Assn. v. Bruen*, 597 U.S. 1 (2022), to show that its regulation of Thurmond's right to bear arms is consistent with this Nation's historical tradition of firearm regulation. We sustain Thurmond's assignment of error, reverse his WUD conviction, and discharge him from further prosecution on that count.

## I. Factual and Procedural History

**{¶4}** The parties agree that Thurmond was indicted in December 2022 for trafficking and possessing marijuana (the "2022 case"). Thurmond applied to be placed in treatment in lieu of conviction and pleaded guilty to the charges. The trial court granted Thurmond's application and stayed the case pending the result of his treatment in lieu of conviction.

**{¶5}** While he was released on intervention, law enforcement found

Thurmond with a firearm. In September 2023, the State indicted Thurmond on one count of WUD in violation of R.C. 2923.13(A)(3), along with two additional counts that Thurmond does not challenge on appeal. The WUD charge alleged that Thurmond possessed a weapon while he was under indictment in the 2022 case.

{¶6} Thurmond moved to dismiss the WUD charge, arguing that Ohio's criminalizing his possession of a firearm based on his pending indictment violated his federal Second and Fourteenth Amendment rights. Citing *Bruen*, he argued that the Second Amendment's plain text covered his firearm possession and that the State bore the burden of demonstrating that R.C. 2929.13(A)(3) was consistent with the Nation's historical tradition of firearm regulation.

{¶7} The State opposed Thurmond's motion. It pointed to historical evidence that (1) felons often faced capital punishment for even nonviolent felonies, (2) legislatures disarmed broad groups of people deemed to be dangerous, and (3) surety laws allowed for the disarmament of individuals after a finding that the person was likely to "breach the peace."

{¶8} After the trial court denied Thurmond's motion, he pleaded no contest. The trial court convicted him on the WUD charge and imposed a sentence. Thurmond has appealed.

## II. Analysis

{¶9} In his sole assignment of error, Thurmond argues that the trial court erred in denying his motion to dismiss the WUD charge. He raises two arguments. First, he asserts that R.C. 2923.13(A)(3) did not actually disable him from possessing a firearm because his placement on intervention in lieu of conviction did not qualify as either being "under indictment for" or "convicted of" a "felony offense involving the illegal possession, use, sale, administration, distribution, or trafficking in any drug of

abuse." Second, Thurmon argues that, if R.C. 2923.13(A)(3) does apply to disable him from possessing a firearm, the disability is unconstitutional under the Second Amendment as applied to him.

{¶10} But as an initial matter, though Thurmond claims he did preserve the issue, a review of his motion to dismiss confirms that Thurmond failed to raise his statutory-based argument below. The failure to raise an argument before the trial court forfeits all but plain error. *State v. Barber*, 2025-Ohio-1193, ¶ 81 (1st Dist.). And because Thurmond does not develop a plain-error argument, we decline to do so on his behalf and do not address his statutory argument.

## A. Our review is de novo

{¶11} Thurmond argues that the WUD charge violated his rights under the Second and Fourteenth Amendments to the United States Constitution. As noted above, the State charged Thurmond under R.C. 2923.13(A)(3), which prohibits a person from possessing a firearm if "[t]he person is under indictment for . . . any felony offense involving the illegal possession, use, sale, administration, distribution, or trafficking in any drug of abuse." The indictment alleged that the WUD statute applied to Thurmond because he was "under indictment for" a drug offense in the 2022 case.

{¶12} We review a trial court's denial of a defendant's motion to dismiss a charge based on constitutional grounds de novo. *State v. Storms*, 2024-Ohio-1954, ¶ 10 (1st Dist.); *State v. Barber*, 2025-Ohio-1193, ¶ 30 (1st Dist.); *State v. Thacker*, 2024-Ohio-5835, ¶ 7 (1st Dist.), *accepted for review*, 2025-Ohio-705, *and held for decision in State v. Striblin*, 2024-Ohio-1050.

## B. *Bruen/Rahimi* test

{¶13} The Second Amendment to the United States Constitution, made applicable to the States through the Fourteenth, provides, "A well regulated Militia,

being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const., amend. II; *see McDonald v. City of Chicago*, 561 U.S. 742, 791 (2010). The Supreme Court of the United States has held that the Second Amendment protects an individual's right to keep and bear arms for self-defense. *Dist. of Columbia v. Heller*, 554 U.S. 570, 595 (2008).

{¶14} In *Bruen*, the Court established a two-step, burden-shifting test for Second Amendment claims. *Bruen*, 597 U.S. at 17. First, the defendant bears the initial burden of establishing that the "plain text of the Second Amendment protects [the defendant's] proposed course of conduct." *Id.* at 32. If the defendant carries this burden, then "the Constitution presumptively protects that conduct" and the burden shifts to the State to "demonstrate that the regulation is consistent with this Nation's historical tradition of firearm regulation." *Id.* at 17.

{¶15} As it did below, the State concedes on appeal that the Second Amendment's plain text covered Thurmond's proposed course of conduct as the WUD statute wholly prohibited Thurmond from possessing a firearm. We therefore proceed to *Bruen*'s second step and must decide whether the State carried its burden.

<u>*Bruen*'s step two</u>

{¶16} Under *Bruen*'s second step, the State bears the burden of compiling a historical record of firearms regulations that demonstrate that the challenged regulation is "consistent with the principles that underpin our regulatory tradition." *United States v. Rahimi*, 602 U.S. 680, 692 (2024). The State carries the burden of compiling this record and it is not the court's role to carry the State's burden on its behalf. *Bruen* at 25, fn. 6 (explaining that "[i]n our adversarial system of adjudication, we follow the principle of party presentation" and courts should "decide a case based on the historical record compiled by the parties."); *see Baird v. Bonta*, 81 F.4th 1036,

6

1041 (9th Cir. 2023) ("A district court should not try to help the government carry its burden by 'sift[ing] . . . historical materials' to find an analogue. The principle of party presentation instead requires the court to 'rely on the parties to frame the issues for decision.'" (Citations omitted.)); *see also Guthrie v. Guthrie*, 2024-Ohio-5581, ¶ 12 (1st Dist.) ("It is not the job of this court to develop or root through the record and relevant authorities to find support for a party's position.").

**{¶17}** This analysis requires courts to determine whether the State has shown that the challenged regulation is "relevantly similar" to historically permissible firearm laws. *Rahimi* at 692. A modern firearm law must be "'relevantly similar'" to historical firearm laws both in "how" and "why" the challenged regulation burdens the Second Amendment right. *Id.* In other words, courts ask whether the right to bear arms was historically subject to "similar restrictions for similar reasons." *Id.*, quoting *Bruen*, 597 U.S. at 29. But the challenged regulation must simply "comport with the principles underlying the Second Amendment" and "need not be a 'dead ringer' or a 'historical twin." *Id.*, quoting *Bruen* at 30.

## C. This court's precedent on categorical disarmament laws

**{¶18}** In *Thacker* and *State v. Brown*, 2025-Ohio-8 (1st Dist.), *accepted for review*, 2025-Ohio-0073, *and held for decision in State v. Striblin*, 2024-Ohio-4713, this court considered the constitutionality of laws that barred a particular category of individuals from possessing a firearm. We first discuss those decisions' treatment of "categorical bans" and then turn to the State's historical record in light of our precedent.

### *State v. Thacker*

**{¶19}** Thurmond challenges R.C. 2923.13(A)(3)'s application to him. This court described R.C. 2923.13(A)(3) as a "categorical ban" that does not apply to the

general public, but to "some subset of that public." *Thacker*, 2024-Ohio-5835, at ¶ 17 (1st Dist.). The *Thacker* court explained that when defending the constitutionality of categorical bans, the State can meet its burden in two ways. *Id.* at ¶ 42. First, the State can point to a specific founding-era law that disarmed the group subject to the challenged modern regulation. *Id.* at ¶ 43. Second, the State can rely more generally on this Nation's history of disarming those found to "pose a particular danger with a firearm." *Id.* at ¶ 44. This court recognized that the legislature may, operating under this dangerousness-rationale, make "categorical judgments about who is too dangerous to possess a firearm." *Id.* at ¶ 45. But notably, this court rejected the idea that this legislative determination is not subject to judicial review. *Id.* at ¶ 49. This is because while "the legislature may make some broad determinations in this regard, the courts may not accept those determinations blindly, as 'complete deference to legislative line-drawing would allow legislatures to define away a fundamental right.'" *Id.*, quoting *United States v. Williams*, 113 F.4th 637, 660 (6th Cir. 2024).

{¶20} In determining whether some classification singled out by the legislature for disarmament can serve as an "adequate proxy for dangerousness," the *Thacker* court considered (1) whether the classification "is the sort of conduct that could justify a presumption of danger," and (2) whether the procedure used to create that classification "was an adequate vehicle" to make that determination. *Id.* at ¶ 83.

{¶21} The *Thacker* court concluded that, even if Thacker's juvenile court adjudication for what would constitute complicity to trafficking in marijuana provided a basis for presuming Thacker's dangerousness, the State failed to carry its burden to demonstrate that R.C. 2923.13(A)(3)'s indefinite disability was supported by a relevantly similar historical tradition of firearm regulation.

8

*State v. Brown*

**{¶22}** In *Brown*, 2025-Ohio-8 (1st Dist.), this court held R.C. 2923.13(A)(2)'s weapons disability for those "under indictment for . . . any felony offense of violence" unconstitutional as applied. *Id.* at ¶ 64. The *Brown* court applied *Thacker*'s categorical-ban framework to determine whether the defendant's disability based on a pending indictment for robbery was supported by this Nation's historical tradition of firearms regulation. *Id.* at ¶ 12. The court noted that Brown, though under indictment, was not prohibited from possessing a firearm as a condition of bond. *Id.* at ¶ 13.

**{¶23}** The *Brown* court observed that only Ohio, Hawaii, and Washington had laws specifically criminalizing the possession of firearms by those under indictment, which rendered Ohio "'an "outlier" among its sister states.'" *Id.* at ¶ 18, quoting *Thacker*, 2024-Ohio-5835, at ¶ 103 (1st Dist.), quoting *Bruen*, 597 U.S. at 79 (Kavanaugh, J., concurring). The court further explained that Ohio began "barring individuals under indictment from firearm possession about 50 years ago." *Id.* at ¶ 19. Though this outlier-status, on its own, did not determine the constitutionality of R.C. 2923.13(A)(2), it was relevant to show that the statute "'bucks the general consensus among modern legislatures.'" *Id.* at ¶ 20, quoting *Thacker* at ¶ 104.

**{¶24}** Turning to the State's historical evidence, the *Brown* court noted that the State failed to present any evidence of a law from the time of the founding or the reconstruction era disarming an individual because of that individual being under indictment. *Id.* at ¶ 21. Without any historical laws directly on point, the State relied on what it described as a tradition giving States the "power to disarm any person found to have engaged in felony conduct." *Brown* at ¶ 22. But the *Brown* court observed that the historical laws relied upon by the State for this proposition did not actually disarm

individuals due to felonious conduct. *Id.* at ¶ 23. Instead, these laws permitted the State to execute those convicted of felonies or require forfeiture of firearms used in the commission of crimes. *Id.* at ¶ 24.

**{¶25}** The *Brown* court found it unnecessary to determine whether the State had shown a historical tradition of disarming those convicted of felonies because Brown had not been convicted of a felony—instead, he was under indictment for a felony. *Brown*, 2025-Ohio-8, at ¶ 25 (1st Dist.). And this difference mattered because a felony conviction at the time of the founding "meant at least two things: (1) trial by jury, and (2) a heightened burden of proof, understood today as proof beyond a reasonable doubt." *Id.* So the court concluded, "[A]ny argument that the State may today disarm all those whom it could execute at the founding presupposes that the disarmed individuals received comparable protections." *Id.* at ¶ 28. Because Brown had received none of these protections and was instead subject to indictment following a "one-sided grand-jury proceeding," the *Brown* court held that being under indictment could not be "reasonably analogized to a conviction by a jury persuaded of guilt beyond a reasonable doubt." *Id.* at ¶ 30.

**{¶26}** Finally, the *Brown* court rejected the State's invitation to apply the dangerousness rationale to Brown because "[n]o court (or jury) expressly found that Mr. Brown poses a danger with a firearm." *Id.* at ¶ 35. Applying *Thacker*, the court determined that a grand jury indictment alone was not an adequate proxy for dangerousness to support the disarmament in that case. *Id.* at ¶ 37. The *Brown* court explained that surety laws were not relevantly similar to a grand jury indictment even though surety laws demonstrated that individuals could historically be disarmed based on proof less than beyond a reasonable doubt. *Id.* at ¶ 42. The court distinguished surety laws for several reasons. First, the court noted that under surety

laws, a magistrate would be required to take evidence and provide the accused with an opportunity to be heard whereas a defendant has no right to be present during a grand-jury proceeding. *Id.* at ¶ 46. Second, surety laws were "forward-looking, meant to assess present or future risk," whereas an indictment is "backward looking" and determines whether there is probable cause to believe that an individual committed the offense, not if the individual might do so again. (Emphasis omitted.) *Id.* at ¶ 47.

**{¶27}** Notably, the *Brown* court explained that surety laws were far more analogous to the "forward-looking pretrial-release inquiry," which accounts "for many of the procedural and prospective concerns associated with the surety proceedings of old." *Brown* at ¶ 51. And because the trial judge in Brown's case specifically did not prohibit him from possessing a firearm as a condition of bail, this court held that there was no adequate determination of dangerousness. *Id.* at ¶ 49, 64.

**D. The State has not carried its *Bruen* burden**

<u>*Brown* controls our consideration of surety laws</u>

**{¶28}** Since *Brown*, the State apparently has not uncovered any new evidence of a historical law barring gun possession by those under indictment as it has directed us to none. So, the State has failed to carry its burden under *Thacker*'s first method of proving the constitutionality of its firearm regulation by pointing to a founding-era law that disarmed the group subject to the challenged modern regulation. *See Thacker*, 2024-Ohio-5835, at ¶ 43 (1st Dist.).

**{¶29}** Like in *Brown*, the State relies on surety laws to justify the WUD charge against Thurmond. But the State offers no reason why this court should depart from its analysis in *Brown*. We adhere to *Brown* and reject the State's arguments for the same reasons explained in *Brown*.

Historical traditions do not support Thurmond's WUD charge

**{¶30}** The State argues that R.C. 2923.13(A)(3)'s application to Thurmond is consistent with a tradition of restricting alcoholics and mentally ill persons from possessing firearms. The State cites *State v. Jenkins*, 2024-Ohio-1094 (5th Dist.), where the court stated, "the overwhelming weight of federal authority upheld federal prohibitions on possession of weapons by felons and/or persons using controlled substances as constitutional under Bruen." *Id.* at ¶ 23, citing *United States v. Ledvina*, 2023 U.S. Dist. LEXIS 143224, *16 (N.D.Iowa Aug. 16, 2023).

**{¶31}** The State also asserts that this court should follow *State v. Skaggs*, 2024-Ohio-4781 (5th Dist.), which held that R.C. 2923.13(A)(3)'s disability based on a prior drug conviction was constitutional as applied. *Id.* at ¶ 28. The *Skaggs* court adopted Justice DeWine's concurrence in *State v. Weber*, 2020-Ohio-6832, ¶ 57-109 (DeWine, J. concurring), detailing the "'historical evidence' as to how and why the right of alcoholics and the mentally ill to possess or carry firearms was restricted." *Skaggs* at ¶ 17. The *Skaggs* court held that this historical firearm regulation was relevantly similar to the modern regulation contained in R.C. 2923.13(A)(3). The *Skaggs* court also adopted the Sixth Circuit's analysis in *Williams*, 113 F.4th 637, discussing the history of disarming those deemed to be dangerous.

**{¶32}** *Skaggs* is distinguishable because it analyzed a disability based on a conviction, not an indictment. And as *Brown* explained, the differences between a felony conviction and a felony indictment are constitutionally significant. *Brown*, 2025-Ohio-8, at ¶ 25 (1st Dist.). So, to the extent *Skaggs* relied on cases upholding the federal felon-in-possession law, it is not on point.

**{¶33}** Also, neither of the historical traditions identified in *Skaggs* are sufficient to sustain the State's burden as applied to Thurmond. First, the Sixth

Circuit's dangerousness discussion in *Willliams* was discussed extensively in *Thacker*. *See Thacker*, 2024-Ohio-5835, at ¶ 31-36, 49 (1st Dist.). *Brown* applied *Thacker*'s dangerous-rationale analysis and concluded that a pending indictment for a violent felony, robbery, was insufficiently analogous to sustain the State's burden. *Brown* at ¶ 31. And notably, in *Thacker*, this court disagreed with the *Skaggs* court's deferential approach to reviewing legislative determinations of dangerousness. *Thacker* at ¶ 50. There is no reason to depart from *Brown*'s reasoning.

**{¶34}** Moreover, the history identified in *Weber*—restricting the rights of the "mentally ill"—is not relevantly similar to R.C. 2923.13(A)(3)'s disability based on a pending drug indictment. *Weber* involved a pre-*Bruen* challenge to R.C. 2923.15(A), which prohibits a person under the influence of drugs or alcohol from carrying or using a firearm. In *Weber*, Justice DeWine identified a historical tradition of restricting gun possession by persons who were intoxicated or mentally ill. *Weber*, 2020-Ohio-6832, at ¶ 99-108. The reason these historical laws restricted a person's right to carry a firearm was because the person had a current condition that hampered their ability to exercise reasoned judgment, be it mental illness or intoxication. But R.C. 2923.13(A)(3)'s disability based on a pending drug indictment does not identify a person's active impairment; rather, the statute disarms a person based on an accusation of past activity in which the person may have engaged. So R.C. 2923.13(A)(3) is not tied to the duration of a person's impairment. Instead, the disarmament lasts the duration of a pending indictment.

**{¶35}** Similarly, the State's reliance on the "overwhelming weight of federal authority" referenced in *Jenkins*, 2024-Ohio-1094, at ¶ 23 (5th Dist.), does not support the WUD charge in this case. Jenkins relied on *Ledvina*, a federal district court case. *Ledvina*, 2023 U.S. Dist. LEXIS 143224. The *Ledvina* court upheld 18 U.S.C.

13

922(g)(3)'s prohibition on the possession of firearms by anyone "who is an unlawful user of or addicted to any controlled substance." *Id.* at *17. The primary reason for rejecting the defendant's challenge to the statute was that *Bruen* did not disturb pre-*Bruen* Eight Circuit precedent upholding the statute. *Id.* at *12-14. Several of the cases *Ledvina* cited resolved the issue this way. *See United States v. Walker*, 2023 U.S. Dist. LEXIS 101032, *10 (D.Neb. June 9, 2023); *United States v. Quang Le*, 669 F.Supp. 3d 754, 757 (S.D.Iowa 2023). The federal courts that have upheld 18 U.S.C. 922(g)(3)'s constitutionality have relied on historical laws prohibiting intoxicated individuals from carrying firearms. *See United States v. Posey*, 655 F.Supp.3d 762, 773 (N.D.Ind. 2023). And as explained above, that tradition is not relevantly similar to disarming a person under indictment for a drug offense.

<u>The court does not take judicial notice of Thurmond's 2022 probation rules</u>

**{¶36}** Finally, the State argues that the trial court in the 2022 case made an individualized determination of Thurmond's dangerousness "when it placed him on probation and subject to the rule that he could not possess weapons during his period of rehabilitation." But those probation rules are not in the record. The State sought to supplement the record under App.R. 9(E) to include two exhibits from the 2022 case, which included a form titled "General Rules of Probation" signed by Thurmond in August and September 2023. The State claimed these rules included an agreement that Thurmond would not possess a firearm. This court denied the State's request to supplement the record with these exhibits because the forms were not from the "case that is currently on appeal" and because the State "does not establish or even allege that [the exhibits] were presented to the trial court below. Rather, appellee is attempting to add matter to the record to further support an argument on appeal."

**{¶37}** Though this court denied the State's request to supplement the record,

the State now maintains that the court can take judicial notice of these rules of probation. The State is incorrect.

{¶38} Thurmond's signed probation rules do not exist in the record, and there is nothing to suggest that the trial court relied upon, saw, or took judicial notice of those rules. Accordingly, we decline to take notice of the probation rules.

### III. Conclusion

{¶39} Because the State has offered no new historical evidence that might warrant departing from the court's analysis in *Brown*, and because the historical tradition of temporarily disarming those who are presently under the influence of drugs, alcohol, or a mental illness is not relevantly similar to being under indictment for a drug-trafficking offense, the State has failed to carry its burden of showing that R.C. 2923.13(A)(3), as applied to Thurmond, is consistent with the Nation's historical tradition of firearm regulation. R.C. 2923.13(A)(3) is unconstitutional under the Second Amendment as applied to Thurmond in this case. The trial court erred in denying Thurmond's motion to dismiss that count.

{¶40} We sustain Thurmond's assignment of error, reverse his WUD conviction, and discharge him from further prosecution on that count. We affirm the trial court's judgment in all other respects.

Judgment accordingly.

CROUSE, J., concurs.
KINSLEY, P.J., concurs in judgment only.